# BartlitBeck LLP

Sean W. Gallagher
Sean.Gallagher@BartlitBeck.com

January 3, 2022

**MEMO ENDORSED**

**Via ECF**

Courthouse Place
54 West Hubbard Street
Chicago, IL 60654
main: (312) 494-4400
direct: (312) 494-4428
BartlitBeck.com

Hon. Katherine Polk Failla
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

Re:  *NEBC v. Allianz Global Investors U.S. LLC et al.*, No. 20 Civ. 07606

Dear Judge Failla,

No longer wanting to pursue its own needlessly broad third-party discovery of 31 individuals and more than 15 nonparty entities, Aon asks the Court to force NEBC to do what Aon has decided it would rather not. The Court should refuse.

NEBC brought this lawsuit as the named fiduciary of various employee defined benefit pension plans whose assets were held in the National Retirement Trust ("NRT"). Compl. ¶¶ 1-2. NEBC is an independent committee of the Blue Cross and Blue Shield Association ("BCBSA") that acts primarily through periodic committee meetings and consists of roughly twelve executives. Ex. 1 (NEBC Charter) at 1-5. One of these executives is a BCBSA employee; the rest work for other Blue Cross Blue Shield entities (the "Blues"). *Id.* at 4. The Blues are distinct companies, and none is a party to this lawsuit. NEBC's charter delegates to the National Employee Benefits Administration ("NEBA")—a department of BCBSA—the responsibility to maintain NRT records, including records of NEBC decision-making on investments. *Id.* at 11.

As NEBC's former fiduciary investment adviser, Aon regularly attended NEBC meetings for more than a decade and knows how NEBC conducts its business. Thus, when NEBC proposed in April and May 2021 to search the files of 14 custodians, including NEBA investment staff and the two NEBC members most likely to have relevant, nonduplicative documents,[1] Aon requested the addition of only a *single* NEBC member. Dkt. 132-9 (4/16/21 Aon Ltr. to NEBC) at 4. Since then, NEBC has already produced more than 75,000 documents (more than any other plaintiff in the Related Actions) from these 14 custodians, including the documents concerning NEBC's decision to invest NRT assets in Structured Alpha.

Aon misleadingly suggests that it has asked the NEBC since April to add 31 current and former NEBC members as custodians. *See* Mot. at 2. The truth is Aon first made that request on

---

[1] One of the two NEBC-member custodians, Robert Kolodgy, was BCBSA's chief financial officer. The other, John Giblin, is chief financial officer at BCBS Tennessee. But contrary to Aon's argument, the fact that *one* of the Blues turned over to NEBC certain *NEBC-related* documents of a *single, current* NEBC member (and investment subcommittee chair) months before Aon served the Blues with broad subpoenas does not mean that *all* of the Blues would now turn over all documents of *every* NEBC member, past or present, including documents unrelated to their NEBC service, as Aon demands. Indeed, Aon itself has since separately subpoenaed both BCBS Tennessee and Mr. Giblin, thereby conceding that they are separate nonparties not controlled by NEBC.

November 16, a delay that betrays Aon's real motive here. More than two months *before* first requesting the additional custodians from NEBC, Aon served broad nonparty subpoenas on fifteen of the Blues that employ or employed almost all of these custodians and thus actually possess their documents.[2] The nonparty Blues have been negotiating their responses in good faith and through separate counsel. Excellus, for example, has produced nearly 1500 documents to date, many from the custodial file of Christopher Booth, the now-retired former NEBC member Aon names as a "priority custodian." NEBC understands other productions from the Blues are forthcoming, with any delay being the result of the overbreadth of Aon's subpoenas, not (as Aon baselessly asserts) some purportedly coordinated effort between the Blues and NEBC to "obstruct" nonparty discovery. Mot. at 3. NEBC has no interest in depriving Aon of unique, relevant, and nonprivileged documents in the Blues' possession, to the extent any exist. But NEBC has no ability to produce documents outside its possession, custody, or control—and it should not be forced to do so simply because Aon no longer wants to negotiate with the Blues.

### A. NEBC Does Not Have Possession, Custody, Or Control

Aon bears the burden to show that NEBC has possession, custody, or control of the requested custodians' documents. *See Greater N.Y. Taxi Ass'n v. City of New York*, 2017 WL 4012051, at *2 (S.D.N.Y. Sept. 11, 2017). It has not met that burden. Thirty of the thirty-one additional custodians work (or worked) for companies other than BCBSA. NEBC does not have a separate information technology infrastructure or issue email addresses to any of its members. *Cf. id.* at *3 (plaintiff lacked control over board member emails where "the board members did not have separate [board] email accounts" (cleaned up)). If relevant, non-duplicative documents exist, they exist on the servers of the nonparty Blues that actually employ (or employed) Aon's requested custodians. NEBC has no control over those documents.

Aon makes no non-speculative showing otherwise. It cannot discharge its burden merely by claiming that NEBC has not adequately sought and been denied access. *In re: Application of Passport Special Opportunities Master Fund, LP*, 2016 WL 844833, at *9 (S.D.N.Y. Mar. 1, 2016) (even if party did not request documents from nonparty, that fact "without more" would not discharge the moving party's burden to prove control). And Aon ignores that 23 of the 31 custodians are *former* NEBC members, over whom NEBC unquestionably lacks controls because "whatever mechanisms of control" NEBC might have had over them "have since disappeared." *Greater N.Y. Taxi Ass'n*, 2017 WL 4012051, at *3.[3]

Aon principally relies on *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 2016 WL 5408171 (S.D.N.Y. Sept. 27, 2016), but that case does not support Aon's position here. There, the defendant moved to compel discovery from only six current or former members of RPI's Board of Directors. *Id.* at *2. The court *denied* the motion as to two current directors, *id.* at *4; granted

---

[2] Aon's broad subpoenas seek all documents concerning Structured Alpha and Allianz, no matter whether such documents are specific to the NRT's investment in Structured Alpha or the custodian's service on NEBC. *See, e.g.*, Ex. 2 (9/3/21 Aon Subpoena to BCBS South Carolina).

[3] Aon also asserts that a common interest agreement between NEBC and the Blues means NEBC has the practical ability to obtain the Blues' documents. Mot. at 2-3. That is flat wrong. "The fact that [the Blues and NEBC] may share a common interest in the outcome of a case does not make them agents for each other, nor does it somehow put [documents in the Blues' possession, custody, or control] within the possession, custody or control of [NEBC]." *Townsend v. Am. Insulated Panel Co.*, 174 F.R.D. 1, 4 (D. Mass. 1997).

the motion as to a former director who "used an RPI email address during his tenure on the board," *id.* at *3; and granted the motion as to three current directors who were "responsible for managing [the subject litigation] on a day to day basis," two of whom had "personally exerted themselves to search for and obtain discoverable documents," *id.* at *7-8. Aon makes no showing that a single custodian on its list is comparable to those at issue in *Royal Park*, let alone all of them.

Indeed, Aon's motion itself demonstrates that NEBC does not have possession, custody, or control of the documents Aon seeks. Aon's prime example of information it hopes to obtain through these 31 additional custodians concerns documents related to BlueCross BlueShield of South Carolina's decision to divest its "*independent, non-NRT* Structured Alpha investments in summer 2019." Mot. at 1 (emphasis added). This admission sinks Aon's argument. Aon cannot establish that NEBC has the power to direct nonparty companies to hand over documents that are (by Aon's own admission) "independent" of the custodians' NEBC service and distinct from the NRT's investments, much less that the custodians (or the Blues that employ them) have some fiduciary duty to volunteer such documents. *Cf. Royal Park*, 2016 WL 5408171 at *4 (limiting board member discovery to period of board service and documents related to board service).

### B. Aon's Request For 31 Additional Custodians Is Unreasonable And Not Proportional

Even if Aon had met its burden of establishing that NEBC has possession, custody, or control of the requested custodians' documents, its motion should be denied. As the party seeking additional custodians, Aon "must demonstrate that the additional requested custodians would provide unique relevant information [sufficient to] justify the inclusion of additional custodians." *Coventry Cap. US LLC v. EEA Life Settlements Inc.,* 2020 WL 7383940, at *6 (S.D.N.Y. Dec. 16, 2020) (cleaned up). Aon attempts to justify its request by claiming the 31 custodians (most of whom no longer serve on NEBC) "*are* the plaintiff." Mot. at 1. But "mere membership on a particular committee is not sufficient, by itself, to justify designation as a custodian whose files must be reviewed," *Assured Guar. Mun. Corp. v. UBS Real Est. Sec. Inc.*, 2013 WL 1195545, at *3 (S.D.N.Y. Mar. 25, 2013), and Aon makes no attempt to show, as it must, that searching the files of each custodian would likely yield unique, responsive documents, *see id*.

Moreover, the Court "must limit the frequency or extent of discovery . . . if it determines that . . . the discovery sought can be obtained from some other source that is more convenient, less burdensome, or less expensive." *SEC v. Strauss*, 2009 WL 3459204, at *10 (S.D.N.Y. Oct. 28, 2009) (quoting Fed. R. Civ. P. 26(b)(2)(C)(i)). The Blues have always been the "more convenient" source for obtaining the documents Aon seeks. Although Aon speculates that NEBC could "drastically reduc[e] any review burden" through "standard methods to eliminate duplication," Mot. at 3, it ignores the unreasonable burden that its motion, if granted, would create on NEBC to collect from 31 individuals at more than fifteen nonparties and filter for production their unique, relevant, and nonprivileged documents (if any) generated by the broad search terms Aon requests.

This result is senseless, as it would force NEBC to restart and redo what the Blues have already undertaken in response to Aon's subpoenas (which Aon has not withdrawn). Aon's motion ignores the "fairly obvious" principle "that a party [opposing discovery] need not seek such documents from third parties if," as is true here, "compulsory process against the third parties is available to the party seeking the documents." *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 138 (2d Cir. 2007). That principle controls here. The Court should reject Aon's effort to force NEBC to undertake the burden of enforcing Aon's overbroad nonparty subpoenas.

3

Very truly yours,

Sean W. Gallagher

*Counsel for Plaintiff Blue Cross and Blue Shield Association National Employee Benefits Committee*

cc: Counsel of record on ECF

The Court is in receipt of Defendant Aon's pre-motion letter, dated, December 28, 2021, seeking a conference to discuss its contemplated motion to compel Plaintiff to add additional document custodians. (Dkt. #132, 134). The Court also received Plaintiff's letter in opposition, dated January 3, 2022. (Dkt. #136, 138). After reviewing the parties' submissions, the Court will dispense with the requirement to convene a pre-motion conference and decide Defendant's underlying motion to compel.

Defendant's motion to compel is hereby GRANTED in part and DENIED in part. The Court will compel the addition only of the 10 NEBC members specified by Defendant as priority custodians (*i.e.*, Mike Mizeur, Mark El-Tawil, Christopher Booth, Bryan Camerlinck, Thurman Justice, Tim Huckle, Karen Abraham, Andrew Corbin, Mark Stimpson, and Charles Divita). (Dkt. #132 at 1). There will be no additional custodians on top of these 10 individuals.

In making this determination, the Court specifically relied on Exhibit 8 of Defendant's pre-motion submission, which is a November 16, 2021 letter from defense counsel to plaintiff's counsel, discussing the issue of custodians. (Dkt. #132-8). In that letter, Defendant articulated specific reasons why it believes these priority custodians likely possess unique and relevant documents. (*Id.* at 3-6).

For eight of these custodians, Defendant cited specific documents produced in discovery as the basis for its belief that they possess unique and relevant information. (Dkt. #132-8 at 3-5). The two remaining custodians for whom Defendant did not cite specific documents as its basis for believing that they possess unique and relevant documents are Mark Stimpson and Charles Divita. As to Mr. Stimpson, Defendant noted that Plaintiff admitted in its interrogatory responses that Mr. Stimpson's role and period of service made it likely that he was knowledgeable about NEBC's Structured Alpha investments. (*Id.* at 5). And with respect to Mr. Divita, Defendant argued that his period of service as a member of both NEBC and its Investment Subcommittee made it likely that he had access to unique information about NEBC's Structured Alpha investments. (*Id.* at 5-6). On these bases, the Court is satisfied that Defendant has articulated a legitimate basis to believe that these 10 individuals are likely to possess unique and relevant documents.

Accordingly, Plaintiff is ordered to designate these 10 individuals as document custodians and run the parties' previously agreed-upon search terms on the documents collected from these additional custodians. The Clerk of Court is directed to terminate the pending motions at docket entries 132 and 134.

SO ORDERED.

Date:    January 5, 2022
         New York, New York

HON. KATHERINE POLK FAILLA
UNITED STATES DISTRICT JUDGE