# BartlitBeck LLP

Sean W. Gallagher
Sean.Gallagher@BartlitBeck.com

Courthouse Place
54 West Hubbard Street
Chicago, IL 60654
main: (312) 494-4400
direct: (312) 494-4428
BartlitBeck.com

May 6, 2022

MEMO ENDORSED

**Via ECF**

Hon. Katherine Polk Failla
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

    Re:    *NEBC v. Allianz Global Investors U.S. LLC et al.*, No. 20 Civ. 07606

Dear Judge Failla,

    Aon's letter motion, Dkt. 178, rests on an unreasonable reading of the Court's January 5 Order (Dkt. 140, "Order"), mischaracterizes NEBC's production of documents from the ten Court-Ordered Custodians, and seeks discovery that is contrary to Rule 26(b)(1). The Court should deny it.

### A. NEBC Fully Complied with the Court's January 5 Order

    The Order largely rejected Aon's request that NEBC collect documents from 31 additional custodians. For the custodians the Court allowed, it wrote, "Plaintiff is ordered to designate these 10 individuals as document custodians and run the parties' previously agreed-upon search terms on the documents collected from these additional custodians." Dkt. 140 at 5. NEBC did just that.

    Promptly after the Court issued the Order and because the issue had not been before the Court on Aon's prior motion, NEBC asked Aon to identify the date range for which Aon requested NEBC to collect and search documents, including whether Aon was asking that NEBC "search the files of the ten custodians during periods in which they were not serving on the Committee." Dkt. 178-3 at 2. Aon confirmed it was indeed asking NEBC to collect and review the Court-Ordered Custodians' documents over an eleven-year period, from 2009 to 2020, irrespective of the period of the custodian's NEBC service. Ex. 1, 1/28/22 Ltr. at 2 n.1.

    NEBC agreed to collect and review documents from the Court-Ordered Custodians for the entirety of this eleven-year date range, although most of the Court-Ordered Custodians served on NEBC during only a fraction of that time period. Ex. 2, 2/2/22 Ltr. at 2. NEBC also confirmed it would run the parties' previously agreed search terms on that entire collection and expressed its "inten[t] to review documents generated by those terms." *Id.* NEBC explained, however, that because the terms had been "negotiated for a different set of custodians," and NEBC did not yet know whether those terms would "generate a disproportionate number of hits for a particular custodian or custodians" once applied to the Court-Ordered Custodians' documents over an eleven-year period, it was reserving the right to make reasonable modifications to those terms as necessary to make the volume of review "reasonable and 'proportional to the needs of the case.'" *Id.* (quoting Fed. R. Civ. P. 26(b)(1)). NEBC informed Aon that it would disclose any such modifications so the parties could meet and confer on the same. *Id.* Responding to Aon's position that NEBC was obligated to seek reconsideration of the Order before it could propose any search

term modifications, NEBC informed Aon it had "no intention of burdening the Court with issues about particular search terms for particular custodians, if any, that were not before the Court on Aon's motion to compel and that the parties are perfectly capable of resolving in good faith." *Id.*

Consistent with the Order, NEBC then ran the parties' agreed-upon search terms on the Court-Ordered Custodians' documents over the more than decade-long period Aon requested. Upon learning that seven (out of more than 300 terms) resulted in a disproportionate number of hits—and determining the burden and cost of reviewing such documents would far outweigh any likely benefit—NEBC informed Aon on March 18 that it was making "minor, targeted changes" to the parties' previously agreed search terms. Dkt 178-2 at 3. NEBC provided Aon specific justifications for each of the terms that NEBC removed or modified, attached detailed hit reports showing that those targeted changes reduced NEBC's review burden from roughly 326,000 documents to around 110,000 documents, and invited Aon to meet and confer on those modifications if it disagreed with them. *Id.* at 3-4, 8, 10-36.

Notably, Aon does not say in its motion what those seven terms were. Instead, Aon suggests that NEBC removed basic terms such as "Allianz" or "Structured Alpha." Dkt. 178 at 2. That is not true. NEBC ran those terms and reviewed every single document that hit on them. The actual terms NEBC removed were "SA," "SAS," "AGG," "XIV," and "reinsurance," and the terms NEBC modified were "Michele" and "Greg."[1] Dkt. 178-2 at 3-4. In the nearly two months since NEBC disclosed these minor changes, Aon has offered no justification for why any of them was likely to exclude unique, responsive documents—especially given the hundreds of search terms that remained—despite NEBC's request for such and its willingness to meet and confer.[2]

NEBC ultimately reviewed more than 110,000 documents collected from ten individuals over a decade-long period who work or worked at eight different nonparty companies nationwide. Of those documents, ***only 4% were responsive***, and many of those were duplicative of documents NEBC had previously produced.

Aon's entire motion rests on its misreading of a single line in the Order. The Court instructed NEBC to collect the Court-Ordered Custodians' documents and "run the parties' previously agreed-upon search terms" on those documents. Dkt. 140 at 5. Aon misinterprets that ruling as requiring NEBC not only to "*run*" the previously agreed search terms, precisely as NEBC did, but also to review every single document family hitting on those search terms irrespective of whatever legitimate burden objection NEBC had under Rule 26(b)(1). If a single term yielded millions of hits for just one custodian, Aon's position is the Court already dispensed with NEBC's Rule 26(b)(1) objection by ordering NEBC to "run" the search terms, and NEBC had no choice but to review every one of those millions of documents, unless it sought reconsideration of the Order and obtained relief from the Court. Dkt. 160-1 at 3. To state Aon's position is to refute it.

Contrary to Aon's assertions, the Order said nothing about the volume of documents NEBC had to review nor did it foreclose NEBC from asserting the Rule 26(b)(1) objection that became

---

[1] For one custodian, whom Aon does not seek to depose, NEBC had to make additional minor changes due to limitations on his employer's electronic search capabilities that precluded NEBC from applying some of the search terms as written. NEBC disclosed each of these changes to Aon on March 18. *See* Dkt. 178-2 at 3-4, 34-36.

[2] Of course, Aon's citation of three documents NEBC produced from Mr. El-Tawil that were generated by the hundreds of broad search terms NEBC applied to his file tells the Court nothing about whether the removed or modified terms would, on their own, generate even one unique, responsive document from him. *See* Dkt. 178 at 3.

apparent to NEBC only once it collected the Court-Ordered Custodians' documents and ran the previously agreed search terms on those documents over the date range Aon requested, all of which happened *after* the Order. The Court did not decide an issue that was never presented to it and that NEBC could not have known about at the time.

### B. Aon's Request That NEBC Review Hundreds of Thousands of Additional, Likely Nonresponsive Documents Is Not Proportional to the Needs of the Case

For all the effort and expense NEBC undertook to collect and review more than 110,000 documents yielding a 4% responsiveness rate, Aon nevertheless asks the Court to force NEBC to review yet another 216,000 documents, *see* Dkt. 172 at 1—an undertaking even *less likely* to yield responsive documents given the peripheral terms NEBC modified—and amazingly, given Aon's delay in seeking the Court's assistance, to do so before May 10.[3] Aon's request is "sufficiently speculative so as to make the request disproportionate to the needs of the case." Dkt. 166 at 5.

Aon's conclusory assertion that NEBC's limited search-term modifications were "significant" does not make them so. Dkt. 178 at 2. Aon cites no evidence, for example, that the Court-Ordered Custodians used the term "SA"—a term Aon itself refused to run, Ex. 3, 6/2/21 Ltr. to NEBC at 2-4—to refer to Structured Alpha or that anyone ever used "AGG" to refer to Allianz. Nor does Aon offer any reason to think the term the term "XIV" in the files of health insurance executives is likely to yield documents relevant to any issue in this case and not otherwise produced, as opposed to documents that use "XIV" as a numeral in a list. Likewise, Aon offers no explanation for why the term "reinsurance," common in the parlance of health insurance company executives, is likely to yield responsive documents not already captured by other broad search terms NEBC applied such as "Allianz" or "Structured Alpha."

Meanwhile, the burden associated with these terms would be enormous. As one example, the term "reinsurance"—when run across the files of just one Court-Ordered Custodian—generated nearly 26,000 unique hits plus families that NEBC would have had to review. Dkt. 178-5 at 5. To put this number in context, that hit count is on par with what ***all*** the terms will generate for court-ordered Aon custodians Allen Cheng and Griffin Keenan combined. *See* Dkt. 154-4 at 5-6 (claiming a review burden of roughly 26,000 documents for the date ranges the Court ordered).

Aon just told the Court of the "heavy" burden Aon would have to endure if it had to review "61,000 documents" related to Structured Alpha. Dkt. 160 at 2. The burden on NEBC of reviewing three-and-a-half times that number of documents, with no evidence that any will relate to Structured Alpha or any other relevant issue, would thus far exceed what is "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). NEBC is not trying to "re-litigate" the issue of burden, as Aon claims, Dkt. 178 at 2, because the volume of review was not before the Court previously. It is now. The Court should put an end to this wasteful fishing expedition and deny Aon's motion.

---

[3] It appears that Aon delayed bringing this issue to the Court to prop up its now-filed motion for an extension of fact discovery, which cites this dispute as a purported reason to extend discovery. Dkt. 172 at 1. If Aon actually believed what it says about the supposed importance of these documents, Aon would have sought the Court's assistance long ago, as NEBC informed Aon of the modifications nearly two months ago. And while Aon complains that NEBC only did so "after the fact," Dkt. 178 at 1, Aon ignores that it had already expressed its unwillingness to agree to *any* modifications to address any issue of burden and that NEBC proceeded with its review (despite Aon's unreasonable position) so as to expedite the production of documents to Aon. The situation Aon now finds itself in is due to Aon's own decision to wait until now to present that position to the Court, not any lack of diligence by NEBC.

Very truly yours,

Sean W. Gallagher

*Counsel for Plaintiff Blue Cross and Blue Shield Association National Employee Benefits Committee*

cc: Counsel of record on ECF

The Court is in receipt of Defendant's letter motion, dated May 3, 2022, seeking a conference to discuss Plaintiff's alleged failure to comply with the Court's January 5, 2022 Order by modifying the search terms that were run on certain custodians' documents.  (Dkt. #178).  The Court is also in receipt of Plaintiff's letter in opposition, dated May 6, 2022.  (Dkt. #179).

Defendant's application for a conference to discuss Plaintiff's alleged failure to comply with the January 5 Order is hereby DENIED.  The Court concurs with Plaintiff that it has thus far complied fully with the Court's January 5 Order, which directed Plaintiff only to "run the parties' previously agreed-upon search terms on the documents collected" from certain document custodians.  (Dkt. #140).  This Order neither obligated Plaintiff to engage in discovery beyond the scope of Rule 26, nor purported to predetermine any Rule 26 objections not then before the Court.

After review of the parties' submissions, the Court is convinced by the representations made in Plaintiff's submission that, in light of the productions already made, the additional 216,000 documents at issue are unlikely to contain unique, responsive materials.  Therefore, the Court finds Defendant's request to be disproportionate to the needs of the case, and it will not compel Plaintiff to review the inordinate number of documents that result from applying the full set of previously agreed-upon search terms on the custodial documents at issue.

The Clerk of Court is directed to terminate the pending motions at docket entries 167, 169, and 178.

Dated:    May 11, 2022                    SO ORDERED.
          New York, New York

                                          *(signature: Katherine Polk Failla)*

                                          HON. KATHERINE POLK FAILLA
                                          UNITED STATES DISTRICT JUDGE